AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Instagram account "im.al.lmessssed.up" that is stored at
premises controlled by Meta Platforms, Inc.

)
)
)
)
)
)

Case No.  **23 MR 807**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 875(c) | Interstate communications containing a threat to injure the person of another. |

The application is based on these facts:

See the attached affidavit, submitted by SA Dustin Patterson and approved by AUSA Zach Jones.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Dustin Patterson, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Telephonically sworn and electronically signed__ *(specify reliable electronic means)*.

Date:  __April 17, 2023__

_____
*Judge's signature*

City and state:  Albuquerque, NM

Honorable John F. Robbenhaar, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT "im.al.Imesssssed.up" THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Dustin Patterson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since May 2017.  As such, I am a law-enforcement officer of the United States and I am empowered by law to conduct investigations and to make arrests for criminal offenses.  My current

assignment is working as a Special Agent in Farmington, New Mexico, where I primarily investigate crimes that occur in Indian Country to include homicide, drug trafficking, aggravated assault, child sexual assault, kidnapping, and rape.  I received training at the FBI Academy in Quantico, Virginia and since the Academy I have completed numerous in-service trainings related to federal investigations.  My training and experience as a Special Agent includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects and witnesses, writing affidavits, examining cellular telephones, managing confidential human sources, and collecting evidence.

3.      Prior to being assigned to Farmington, New Mexico, I was a Special Agent in the Portland, Oregon field office, where I worked on the Clackamas County Interagency Task Force (CCITF).   I have participated in numerous complex drug trafficking and money laundering investigations.

4.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations 18 U.S.C. § 875(c), interstate communications containing a threat to injure the person of another, have been committed by ATTICUS JOHNSON. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### Investigation Summary

7.     On April 3, 2023, Navajo Nation Criminal Investigator (CI) Wilson Charlie notified the FBI that ATTICUS JOHNSON had made multiple electronic threats to use a firearm at Newcomb, Farmington, and Kirtland-area schools.  Later in the evening of April 3, 2023, CI Charlie informed the FBI that the Navajo Nation Police Department (NPD) arrested JOHNSON in violation of tribal law for sending threatening communications via Instagram.  NPD officers arrested JOHNSON at his residence in Sheep Springs, New Mexico, San Juan County, at approximately 8:30 p.m.  At the time of his arrest, Navajo Nation police officers asked JOHNSON if he knew why he was being arrested; he responded "yes."  NPD Officers asked JOHNSON about the threats. He indicated someone "hacked" his Instagram account.

8.     During the arrest, NPD officers received consent from JOHNSON to search his room.  While ensuring there were no firearms in his room, NPD officers seized JOHNSON's cellphone (Device) from a nightstand in his bedroom.  JOHNSON indicated the phone belonged to him; he asked officers if he could take the phone with him.  JOHNSON's mother, D.J., told NPD officers that her son had been with her and his father, driving back from Gallup, NM earlier that afternoon, around the time the threats were electronically communicated.  While driving from Gallup, NM to Sheep Springs, NM, JOHNSON was sitting in the backseat using his cellphone (Device).   The Device was taken into NPD custody and entered in evidence.

9.     On April 4, 2023, the Navajo Nation notified the FBI that JOHNSON was given medication because of his schizophrenia diagnosis and was released from its custody.

3

10.     On April 4, 2023, I spoke telephonically with the original complainant, C.H., hereinafter referred to as Witness 1.  Witness 1 provided me the following information:

11.     On April 3, 2023, Witness 1 was contacted by her niece, also named C.H., YOB 2002, hereinafter referred to as Witness 2. Witness 2 said a male who she knew from middle school (JOHNSON) was making threats to her concerning her little sister.  While threatening Witness 2's younger sister, JOHNSON also threatened that he was going shoot people at Newcomb High School, where Witness 2's younger sister attends school.

12.     Following my conversation with Witness 1, I called Witness 2.  Witness 2 provided the following information:

13.     Witness 2 is currently enlisted in the United States Navy and is stationed in Oceana, Virginia.  On April 3, 2023, while in Virginia, Witness 2 was on Instagram and noticed that an old middle-school classmate (JOHNSON) had posted on his Instagram account about wanting to fight her, as well as several other individuals.  Witness 2 messaged JOHNSON directly and asked why he wanted to fight her.  The conversation escalated; JOHNSON threatened to kill Witness 2's younger sister, a third individual with initials C.H., YOB 2004, hereinafter referred to as Jane Doe, by sending the message, "*your sis will diee*."[1]  Later in the conversation, JOHNSON sent the message, "*I'm gonna shoot up newcomb*."  Witness 2 believed this was a threat that JOHNSON was going to shoot people at Newcomb High School. Jane Doe attends school at Newcomb High School.  A screenshot of that part of the Instagram conversation is shown in Image 1.

---

[1] For the sake of clarity, the relevant parties are thus:
- Witness 1 = Original complainant; aunt of Witness 2.
- Witness 2 = Niece of Witness 1; Naval enlistee in Virginia to whom JOHNSON communicated the threats.
- Jane Doe = Younger sister of Witness 2; Newcomb High School student threatened.

*Image 1: Screenshot provided by Witness 2*



14.     Following the message exchange, Witness 2 blocked JOHNSON and no longer received any communications from him.  The communication between Witness 2 and JOHNSON occurred at approximately 5:00 p.m. MST.  Witness 2 believed JOHNSON was the user of the Instagram account because the name "Atticus Johnson" and "Atticus" is used in multiple locations. Witness 2 and JOHNSON went to middle school together in New Mexico and were acquaintances. According to Witness 2, they knew each other, but were not friends and did not have any problems with each other.  JOHNSON knows Witness 2's sister, Jane Doe, goes to Newcomb High School. JOHNSON also knows Witness 2 is in the Navy.

15.     On April 3, 2023, Newcomb High School Lead Safety Adviser K.A. received screenshots from multiple parties showing screenshots of threats made on Instagram by an account

5

they believed belongs to JOHNSON.  I have reviewed a number of these screenshots and believe it is the same account because the images in the screenshots are the same as those found on the Instagram profile, "im.al.Imessssed.up".  During multiple message exchanges, the Instagram user presumed to be "im.al.Imessssed.up" threatened people by name and also sent one message to username "elishawilsonn" stating "*I'm about to shoot up Newcomb. Fuck them bullies. Catch my AR-15 rounds. Gang gang.*"  The human user of account "elishawilsonn" has yet to be identified, but screenshots of the Instagram message interaction were sent to Newcomb High School Lead Safety Adviser K.A.

16.     On April 3, 2023, Jane Doe was interviewed by NPD officers.  Jane Doe said "a while ago" while JOHNSON was waiting to change buses at Newcomb High School, JOHNSON was "talking trash" about her sister (Witness 2) being in the military.  Jane Doe told JOHNSON to stop talking bad about her sister.  Jane Doe said she has had no other disputes with JOHNSON. Affiant believes this conversation with Jane Doe shows JOHNSON is aware that Witness 2 is in the United States Navy, a fact referenced in JOHNSON'S aforementioned electronic conversation with Witness 2.

17.     Based on these facts, I have probable cause to believe JOHNSON violated 18 U.S.C. § 875(c), interstate communications containing a threat to injure the person of another. There is probable cause to believe the Instagram account "im.al.Imessssed.up" belongs to and was utilized by JOHNSON based on the identifiers "Atticus" and "Atticus Johnson" referenced in his Instagram user-account names, as well as the fact that the public posts and private messages sent by the account specifically reference facts personally known to JOHNSON.  The messages reference Witness 2 being an "E3," which corresponds to a junior-enlisted member of the Navy. The messages threaten Jane Doe, who JOHNSON knows is Witness 2's younger sister and attends

Newcomb High School. I believe JOHNSON used the Instagram account to transmit threatening messages regarding Jane Doe and Newcomb High School from Sheep Springs, New Mexico because JOHNSON was arrested at his home in Sheep Springs a short time after the messages were sent. The messages were transmitted in interstate commerce because they were sent to WITNESS 2, who is currently serving in the United States Navy and is stationed in Oceana, Virginia.

18.     On April 4, 2023, based on this information, United States Magistrate Judge B. Paul Briones signed a federal complaint authorizing JOHNSON's probable-cause arrest. On April 4, 2023, JOHNSON was arrested near Shiprock, New Mexico, and transported to San Juan Detention facility where he was booked and held until his initial appearance.

19.     Following JOHNSON'S arrest, I received police reports from NPD. The reports provided the following information:

20.     Following JOHNSON'S arrest by NPD on April 3, 2023, he was transported to Kayenta, Arizona where he was booked in on Tribal charges, including sending threatening messages. JOHNSON was released from custody during the morning hours of April 4, 2023.

21.     On April 4, 2023, at 8:44 a.m., a complainant, C.C., contacted NPD and requested police respond to Monument Valley High School regarding a 20-year-old male attempting to enroll at Monument Valley High School (MVHS) in Kayenta, Arizona. Upon responding to MVHS, the school's principal informed officers the male seemed have mental-health issues. C.C. told officers that JOHNSON got on a high-school bus in the Sandstone Housing area in Kayenta, Arizona. The bus took JOHNSON to MVHS. C.C. said JOHNSON first entered Kayenta Middle School and attempted to enroll. Middle-school staff told JOHNSON he would need to enroll at the high school. While interacting with JOHNSON, C.C. stated JOHNSON made several statements such

7

as, "*You guys don't have much security here*" and "*You guys don't lock all your doors at the high school.*"

22.     After speaking with MVHS staff, NPD contacted the male, who was identified as JOHNSON.  JOHNSON told officers he was trying to get home and knew he was at a high school. JOHNSON said he was bipolar and takes medication.  NPD officers agreed to give JOHNSON a ride to Red Mesa, Arizona, but couldn't take him further.  JOHNSON was transported to a hospital in Red Mesa and later in the day was arrested by Navajo Criminal Investigators on the federal probable-cause complaint and arrest warrant issued out of the District of New Mexico.

23.     I know based on my training and experience that Instagram is a social-media application often used on mobile devices, like cellphones.  Because JOHNSON told officers the Device seized at the time of his arrest belonged to him, as well as the facts explained in this affidavit, I have probable cause to believe the Device was used by JOHNSON to access Instagram and send the threatening messages.

24.     The Device is currently in the lawful possession of the FBI.  It came into the FBI's possession after it was seized during the consent search of JOHNSON's bedroom.  After the Device was seized it remained in NPD custody until it was turned over to the FBI on April 12, 2023.  This Device is the subject of a separate request for a search warrant submitted to this Court.

25.     I have knowledge that a preservation request was directed to Instagram regarding this user account.

**<u>BACKGROUND CONCERNING INSTAGRAM</u> [2]**

26.     Instagram is a service owned by Meta, a United States company and a provider of an electronic-communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.  Specifically, Instagram is a free-access social-networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

27.     Meta collects basic contact and personal-identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank-account number, and other personal identifiers.  Meta keeps records of changes made to this information.

28.     Meta also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

29.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the

---

[2] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Privacy Policy," https://privacycenter.instagram.com/policy/; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

30.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service.  Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

31.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).  Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments.  Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

32.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users.  Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions.  Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users.  Users can also manually search for friends or associates.

33.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings.  Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

34.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos.  Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile.  Users can remove posts from their profiles by deleting or archiving them.  Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

35.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram.  Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@").  An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

36.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

37.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed

from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

38.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

39.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

40.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Meta retains records of a user's search history and followed hashtags.

41.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

42.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

43.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

44.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

45.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

46.     For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

47.     In addition, the user's account activity, logs, stored-electronic communications, and other data retained by Meta can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

48.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

49.     Other information connected to the use of Instagram may lead to the discovery of additional evidence.  For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services

used to communicate with co-conspirators.  In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

50.    Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

51.    Based on the forgoing, I request that the Court issue the proposed search warrant.

52.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law-enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Dustin Patterson
Special Agent, FBI

Electronically submitted and
telephonically sworn on April 17, 2023:

UNITED STATES MAGISTRATE JUDGE

15

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to information associated with Instagram account "im.al.Imessssed.up" (active on, but not limited to, April 3, 2023), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.      All business records and subscriber information, in any form kept, pertaining to the account, including:

     1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

     2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

     3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

     4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

     5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

     6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, on April 3, 2023;

     7.      Privacy and account settings, including change history; and

     8.      Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.      All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, on April 3, 2023;

C.      All content, records, and other information relating to communications sent from or received by the account on April 3, 2023, including but not limited to:

      1.      The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

      2.      All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

      3.      All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

      4.      All associated logs and metadata;

D.      All content, records, and other information relating to all other interactions between the account and other Instagram users on April 3, 2023, including but not limited to:

      1.      Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

      2.      All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

      3.      All contacts and related sync information; and

      4.      All associated logs and metadata;

E.      All records of searches performed by the account on April 3, 2023; and

F.      All location information, including location history, login activity, information geotags, and related metadata on April 3, 2023.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 875(c), interstate communications containing a threat to injure the person of another, those violations involving ATTICUS JOHNSON and occurring on April 3, 2023, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.    Threats to do bodily harm to students attending schools;

B.    Threats to do bodily harm to other individuals, including those not attending a school;

C.    Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

D.    Evidence indicating the account owner's state of mind as it relates to the crime under investigation;

E.    The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

F.    The identity of the person(s) who communicated with the account holder about the threats to conduct a mass shooting at Newcomb High School, to include user "elishawilsonn," and including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits,

and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.